Filed 11/20/18; Certified for Publication 12/6/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEVON TORREY LOVE et al., | C086030 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0039311) |
| v. | |
| STATE DEPARTMENT OF EDUCATION et al., | |
| Defendants and Respondents. | |

This case raises constitutional challenges to Senate Bill No. 277, which repealed the personal belief exemption to California's immunization requirements for children attending public and private educational and child care facilities.[1]  Plaintiffs are four

---

[1]  The California Court of Appeal, Second Appellate District recently rejected various constitutional challenges to Senate Bill No. 277.  (*Brown v. Smith* (2018) 24 Cal.App.5th 1135 [rejecting claims Sen. Bill No. 277 violated four provisions of the California Constitution:  the free exercise of religion, the right to a public education, equal protection, and substantive due process].)  Senate Bill No. 277 was also previously challenged in two federal cases, both of which upheld its validity under federal law:  *Middleton v. Pan* (C.D.Cal. 2017) 2017 U.S. Dist. LEXIS 216203 (granting motion to dismiss complaint alleging Sen. Bill No. 277 violated federal civil rights and criminal

parents and their children residing throughout California and a California nonprofit corporation, A Voice for Choice, Inc.[2] Defendants are the California Department of Education, the California Department of Public Health and various state officials.

As our colleagues explained in *Brown*: "In 1890, the California Supreme Court rejected a constitutional challenge to a 'vaccination act' that required schools to exclude any child who had not been vaccinated against smallpox. [Citation.] In dismissing the suggestion that the act was 'not within the scope of a police regulation,' the court observed that, '[w]hile vaccination may not be the best and safest preventive possible, experience and observation . . . dating from the year 1796 . . . have proved it to be the best method known to medical science to lessen the liability to infection with the disease.' [Citation.] That being so, 'it was for the legislature to determine whether the scholars of the public schools should be subjected to it, and we think it was justified in deeming it a necessary and salutary burden to impose upon that general class.' [Citation.] [¶] More than 125 years have passed since [our Supreme Court's decision in *Abeel v. Clark* (1890) 84 Cal. 226], during which many federal and state cases, beginning with the high court's decision in *Jacobson v. Massachusetts* (1905) 197 U.S. 11 [49 L.Ed. 643, 25

statutes, and caused intentional infliction of emotional distress) and *Whitlow v. Cal. Dept. of Education* (S.D.Cal. 2016) 203 F.Supp.3d 1079 (denying motion for preliminary injunction brought on grounds that elimination of exemption violated free exercise, equal protection, due process, right to education, and a federal statute, and finding no likelihood of success on the merits).

[2]     Some of the plaintiffs previously brought an action against the defendants in the United States District Court Central District of California alleging Senate Bill No. 277 violated: (1) their substantive due process rights under the Fourteenth Amendment; (2) the equal protection clause of the Fourteenth Amendment; and (3) 42 U.S.C. section 1983. The district court granted defendants' motion to dismiss the case, but gave the plaintiffs limited leave to amend the complaint. (*Torrey-Love v. California Dept. of Education* (C.D.Cal. Nov. 21, 2016, No. 5:16-cv-02410-DMG-DTB) Dkt. No. 51.) Defendants state the plaintiffs voluntarily dismissed the federal action on February 1, 2017.

2

S.Ct. 358] (*Jacobson*), have upheld, against various constitutional challenges, laws requiring immunization against various diseases. This is another such case, with a variation on the theme but with the same result." (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1138.)

Here, plaintiffs sued defendants claiming Senate Bill No. 277 violates their rights under California's Constitution to substantive due process (art. I, § 7), privacy (art. I, § 1), and a public education (art. IX, § 5). The trial court sustained the defendants' demurrer to plaintiffs' complaint without leave to amend and plaintiffs appeal. On appeal, plaintiffs also raise an additional argument that Senate Bill No. 277 violates their constitutional right to free exercise of religion, although they did not allege a separate cause of action on that basis in their complaint.

Plaintiffs' arguments are strong on hyperbole and scant on authority. We agree with our colleagues in *Brown* that Senate Bill No. 277 does not violate the constitutional right to attend school. We further conclude Senate Bill No. 277 does not violate plaintiffs' rights to substantive due process or privacy.[3] While plaintiffs' free exercise of religion claim was not raised in their complaint, we consider it for purposes of determining whether plaintiffs should be granted leave to amend their complaint. We find any such amendment would be futile because, as the *Brown* court found, Senate Bill No. 277 does not violate the right to free exercise of religion. Accordingly, we affirm.

---

[3] Although the *Brown* court also found Senate Bill No. 277 did not violate the plaintiffs' rights to due process, its decision was in response to the argument that Senate Bill No. 277 "is void for vagueness under California's due process clause," which is not asserted here. (*Brown v. Smith*, *supra*, 24 Cal.App.5th at pp. 1147-1148.)

FACTUAL AND PROCEDURAL BACKGROUND OF SENATE BILL NO. 277

Senate Bill No. 277 amended various provisions in the Health and Safety Code,[4] effective January 1, 2016. (See Stats. 2015, ch. 35.) Pertinent to this appeal, the bill eliminated a parent's ability to opt out of the vaccination requirements imposed on children based on the parent's personal beliefs.[5] As of July 1, 2016, school authorities "shall not unconditionally admit" any child for the first time to "any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center," or advance any child to seventh grade, unless he or she has been fully immunized against 10 specific diseases and "[a]ny other disease deemed appropriate by the [California Department of Public Health],"[6] or qualifies for an exemption recognized by statute. (§§ 120335, subds. (b) & (g)(3), 120370.)

A student is exempt from the requirement if a licensed physician states in writing that "the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe." (§ 120370, subd. (a).) Additionally, vaccinations are not required for students in a home-based private school or independent study program who do not receive classroom-based instruction, or those in individualized education programs. (§ 120335, subds. (f) & (h).)

---

[4] All further section references are to the Health and Safety Code unless otherwise specified.

[5] The statute previously provided: "Immunization of a person shall not be required for admission to a school . . . if the parent or guardian . . . files with the governing authority a letter or affidavit that documents which immunizations required by [law] have been given, and which immunizations have not been given on the basis that they are contrary to his or her beliefs." (§ 120365 [repealed by Sen. Bill No. 277].)

[6] A vaccination for "[a]ny other disease deemed appropriate by the [California Department of Public Health]" may only be mandated "if exemptions are allowed for both medical reasons and personal beliefs." (§§ 120325, subd. (a)(11), 120335, subd. (b)(11), 120338.)

The vaccination requirements are intended to provide "[a] means for the eventual achievement of total immunization of appropriate age groups against [certain] diseases." (§ 120325, subd. (a).) According to the Senate Committee on Education's analysis, the authors of the bill believed it was necessary because: " 'In early 2015, California became the epicenter of a measles outbreak which was the result of unvaccinated individuals infecting vulnerable individuals including children who are unable to receive vaccinations due to health conditions or age requirements. . . . Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people. Between 2000 and 2012, the number of Personal Belief Exemptions (PBE) from vaccinations required for school entry that were filed rose by 337%. . . . From 2012 to 2014, the number of children entering Kindergarten without receiving some or all of their required vaccinations due to their parent's personal beliefs increased to 3.15%. In certain pockets of California, exemption rates are as high as 21% which places our communities at risk for preventable diseases. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary to preserve herd immunity and prevent future outbreaks.' " (Sen. Com. on Education, Analysis of Sen. Bill No. 277 (2015-2016 Reg. Sess.) as amended April 9, 2015, p. 5.)

The Assembly Committee on Health's report states: "Each of the 10 diseases was added to California code through legislative action, after careful consideration of the public health risks of these diseases, cost to the state and health system, communicability, and rates of transmission. . . . [¶] . . . [¶] All of the diseases for which California requires school vaccinations are very serious conditions that pose very real health risks to children." (Assem. Com. on Health, Analysis of Sen. Bill No. 277 (2015-2016 Reg. Sess.) as amended May 7, 2015, p. 4.)

In that report, the committee "discusses the protective effect of community immunity, which 'wanes as large numbers of children do not receive some or all of the

5

required vaccinations, resulting in the reemergence of vaccine preventable diseases in the U.S.' [Citation.] The report explains that the vaccination rate in various communities 'varies widely across the state,' and some areas 'become more susceptible to an outbreak than the state's overall vaccination levels may suggest,' making it 'difficult to control the spread of disease and mak[ing] us vulnerable to having the virus re-establish itself.' [Citation.] Further, studies have found that 'when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease,' and one analysis 'found that more than a quarter of schools in California have measles-immunization rates below the 92-94% recommended by the CDC [(Center for Disease Control)].' [Citation.] The report describes the December 2014 outbreak of measles linked to Disneyland (131 confirmed cases); states that according to the CDC, 'measles is one of the first diseases to reappear when vaccination coverage rates fall'; and states that in 2014, 600 cases were reported to the CDC, the highest in many years." (*Brown v. Smith*, *supra*, 24 Cal.App.4th at p. 1140.)

DISCUSSION

I

*Standard Of Review*

"A demurrer tests the legal sufficiency of the complaint. We review the complaint de novo to determine whether it alleges facts sufficient to state a cause of action. For purposes of review, we accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed." (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1141.) We may affirm a trial court judgment on any basis presented by the record whether or not relied upon by the trial court. (*Blumhorst v. Jewish Family Services of Los Angeles* (2005) 126 Cal.App.4th 993, 999.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the

6

trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff[s] ha[ve] the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Brown v. Smith*, *supra*, 24 Cal.App.5th at pp. 1141-1142.)

## II

### *Substantive Due Process*

In their complaint, plaintiffs assert Senate Bill No. 277 violates their substantive due process rights because it: (1) infringes on their rights to bodily autonomy and to refuse medical treatments; (2) conditions the right to attend school on giving up the right to bodily autonomy and to refuse medical treatments; and (3) negates their parental right to make decisions in the upbringing of their children.[7] While plaintiffs argue the trial court erred in sustaining the demurrer to this cause of action, their opening brief is virtually devoid of any legal authority on this issue.[8] (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as [forfeited], and pass it without consideration' "].) Plaintiffs further do not

---

[7] Plaintiffs argue the trial court failed to address the "precedent or argument" regarding "the right for parents to direct the upbringing of their children." To the contrary, the trial court expressly addressed and rejected their claim that Senate Bill No. 277 "infringes upon the rights of parents to direct the upbringing of their children." We note plaintiffs did not assert this as a separate cause of action, but rather included those allegations in their cause of action for violation of due process in the complaint. Accordingly, we address that issue in this section of the opinion.

[8] Their only legal citations are: *Bartling v. Superior Court* (1984) 163 Cal.App.3d 186, 195 for the general proposition that "[t]he state's 'constitutional right of privacy [also] guarantees to the individual the freedom to choose to reject, or refuse to consent to, intrusions of his bodily integrity' "; *Jacobson v. Massachusetts*, *supra*, 197 U.S. at page 11 [49 L.Ed. 643] and *United States v. Carolene Products* (1938) 304 U.S. 144 [82 L.Ed. 1234] for the premise that those federal cases are not binding and do not apply under "the modern due-process construct."

7

apply the appropriate elements for determining whether the law satisfies the constitutional substantive due process construct.

To determine whether a person's liberty interest for purposes of substantive due process has been violated, the court must balance his or her liberty interest against the relevant state interests. (*Cruzan v. Director, MO Health Dept.*(1990) 497 U.S. 261, 279 [111 L.Ed.2d 224, 242].) Where the state infringes on a fundamental constitutional right, strict scrutiny applies; otherwise, the rational basis test applies. (*Adoption of Kay C.* (1991) 228 Cal.App.3d 741, 748.) A law subject to strict scrutiny is upheld only if it is narrowly tailored to promote a compelling governmental interest.[9] (*Johnson v. California* (2005) 543 U.S. 499, 505 [160 L.Ed.2d 949, 958].) Under rational-basis review, by contrast, a law need only bear a rational relationship to a legitimate governmental interest. (*Vacco v. Quill* (1997) 521 U.S. 793, 799 [138 L.Ed.2d 834, 841].)

Plaintiffs' substantive due process claim fails under either level of scrutiny.[10] We agree with the *Whitlow* court: "Unquestionably, imposing a mandatory vaccine requirement on school children as a condition of enrollment does not violate substantive due process. This case is even one more step removed, as it involves the removal of an

---

[9]     Plaintiffs claim, without citing to any legal authority, the standard of review is strict scrutiny and that, "[t]o overcome strict scrutiny, the concern must be real, imminent, and widespread -- and the law must be narrowly tailored to meet its end." The standard is not whether the "concern must be real, imminent, and widespread," but rather whether the law promotes a compelling governmental interest.

[10]     The federal district court also rejected the plaintiffs' substantive due process claim regarding Senate Bill No. 277. (*Torrey-Love v. California Dept. of Education*, *supra*, Dkt. No. 51 at p. 6.) The court explained: "The Supreme Court long ago declared that a state can require children to be vaccinated as a precondition for school attendance without running afoul of the Due Process Clause in the interests of maintaining the public health and safety. . . . Though Plaintiffs assail these cases for their age, they have not been overturned and are still good law and binding upon this Court." (*Ibid.*)

exemption that is not required under the law.  The removal of the [exemption] subjects the children to mandatory vaccination, but the State is well within its powers to condition school enrollment on vaccination." (*Whitlow v. California Dept. of Education*, *supra*, 203 F.Supp.3d at p. 1089.)

It is well established that laws mandating vaccination of school-aged children promote a compelling governmental interest of ensuring health and safety by preventing the spread of contagious diseases.  (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1146, citing *Whitlow v. California Dept. of Education*, *supra*, 203 F.Supp.3d at pp. 1089-1090; *Abeel v. Clark*, *supra*, 84 Cal. at pp. 230-231 ["Vaccination, then, being the most effective method known of preventing the spread of the disease referred to, it was for the legislature to determine whether the scholars should be subjected to it, and we think it was justified in deeming it a necessary and salutary burden to impose upon that general class. . . .  'What is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is invested with a large discretion, which cannot be controlled by the courts, except, perhaps, when its action is clearly evasive, and where, under pretense of lawful authority, it has assumed to exercise one that is unlawful.' "]; *Jacobson v. Massachusetts*, *supra*, 197 U.S. at p. 11 [49 L.Ed. at p. 643] [upheld state mandatory vaccination law under the Fourteenth Amendment]; *Zucht v. King* (1922) 260 U.S. 174, 176 [67 L.Ed. 194, 198] [ordinances mandating certificate of vaccination prior to allowing school attendance did not violate substantive due process rights because it was "settled that it is within the police power of a state to provide for compulsory vaccination"].)  That interest exists " 'regardless of the circumstances of the day, and is equally compelling whether it is being used to prevent outbreaks or eradicate diseases.' " (*Brown*, at p. 1146.)

Plaintiffs' failure to cite or even acknowledge the seminal cases (*Abeel* or *Zucht*) directly on point and counter to their argument in their opening brief violates counsel's

9

duty to the court. "Attorneys are officers of the court and have an ethical obligation to advise the court of legal authority that is directly contrary to a claim being pressed. [Citation.] Rule 5-200 of the Rules of Professional Conduct addresses the issue and provides that, '[i]n presenting a matter to a tribunal, a member: [¶] (A) Shall employ . . . such means only as are consistent with truth; [and] [¶] (B) Shall not seek to mislead the judge . . . by an artifice or false statement of fact or law . . . .' " (*In re Reno* (2012) 55 Cal.4th 428, 510.)

In reply to defendants' identification of these authorities, plaintiffs argue the cases are archaic and no longer applicable by modern standards. They further attack defendants, stating they "fail[ed] to synthesize dated precedent" because *Abeel*, *Zucht*, and *Jacobson* were issued "before the landmark due-process-based bodily autonomy cases." Notably, however, plaintiffs do not provide any synthesis they believe is lacking, nor do they provide legal citations to the "landmark due-process-based bodily autonomy cases" that purportedly inform the analysis. " 'Contentions supported neither by argument nor by citation of authority are deemed to be without foundation, and to have been abandoned.' " (*Estate of Randall* (1924) 194 Cal. 725, 728-729.) We are aware of no case holding mandatory vaccination statutes violate a person's right to bodily autonomy. Thus, we see no reason to view *Abeel*, *Zucht*, or *Jacobson* as obsolete.

Plaintiffs also argue our Supreme Court's holding in *Abeel* is "circular and conclusory," "doesn't even come close to modern standards of due process," is not instructive because it was decided before "California's modern compulsory-education laws were enacted in 1976" and cases confirmed that public education is a fundamental right in California, and an Illinois case has "dialed back the over-broad *Abeel* holding." None of these arguments has merit.

Of course, it is axiomatic that an Illinois court has no jurisdiction to narrow, overturn, or "dial back" a California Supreme Court decision. Nor does the Illinois case have any application to the issue here. Plaintiffs cite to the following sentence in *Potts v.*

10

*Breen* (1897) 167 Ill. 67 [47 N.E. 81]: "The record wholly fails to show that there were any grounds upon which the board could have any reasonable belief that the public health was in any danger whatever." (*Id*. at p. 78.) In *Potts*, however, a school district (not the legislature) imposed a mandatory vaccination requirement, and the court found the district had no power conferred upon it to do so, except in cases of emergency. (*Id.* at pp. 71-75.) There is simply no comparison between the ultra vires action of the school district in *Potts* and our Legislature's enactment here.

Further, plaintiffs fail to explain or identify the "modern due process standards" that purportedly are incompatible with *Abeel* -- and we find none. As to plaintiffs' argument that *Abeel* is inconsistent with the right to attend school, as explained below, we find, as did our colleagues in *Brown*, Senate Bill No. 277 does not violate a student's right to attend school.

Plaintiffs next argue *Zucht* "merely stated that states can pass vaccine laws" and *Jacobson* and *Zucht* are limited to their facts "before the era of international travel -- indeed before much travel at all." Plaintiffs are again quite incorrect. In *Zucht*, the United States Supreme Court held that a state's mandatory vaccination law did not violate substantive due process requirements; it did not merely state that states may pass vaccine laws. (*Zucht v. King*, *supra*, 260 U.S. at pp. 175-176 [67 L.Ed. at pp. 197-198].) Further, plaintiffs fail to explain and we can find no reason why these cases would be inapplicable merely because international and domestic travel is more prevalent now. To the extent plaintiffs argue we should decline to follow these decisions by the United States Supreme Court, we disagree. (See *Agostini v. Felton* (1997) 521 U.S. 203, 207 [138 L.Ed.2d 391, 404] ["The Court neither acknowledges nor holds that other courts should ever conclude that its more recent cases have, by implication, overruled an earlier precedent. Rather, lower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."].)

11

Although not addressed in the substantive due process portion of their brief, plaintiffs argue Senate Bill No. 277 is not narrowly circumscribed because there are several " 'available alternative means' to accomplishing the state's goal of higher vaccination r[ate]s" including "a massive education effort," distributing free medication to eliminate copayments for families, or providing incentives for vaccination in other ways. In their reply brief, plaintiffs further add that, because the law "does not cover homeschooled children and categorically exempts foster children" and does not account for the millions of tourists entering California each year ("many from countries with no vaccination requirements"), it "is so under-broad that it cannot achieve its objectives." They posit, "[a]bsent quarantines at the border, [Senate Bill No. 277] is not tailored to meet its ends." We disagree.

First, we note the pertinent analysis is whether the elimination of the exemption is narrowly circumscribed to address the goal of the law -- here, "[a] means for the eventual achievement of total immunization" of appropriate school-aged children. (§ 120325, subd. (a).) As the *Whitlow* court noted: "The objective of total immunization is not served by a law that allows for [exemptions], whether the [exemption] rate is 2% or 25%." (*Whitlow v. California Dept. of Education*, *supra*, 203 F.Supp.3d at p. 1091.) "While removing the [exemption] is an aggressive step, so, too, is the goal of providing a means for the eventual achievement of total immunization. An aggressive goal requires aggressive measures, and the State of California has opted for both here." (*Ibid.*)

Second, we agree with our colleagues in *Brown*, rejecting a similar argument: "Plaintiffs allege in their complaint that Senate Bill No. 277 . . . is not narrowly tailored to meet the state's interest, because there are less restrictive alternatives (such as alternative means (unspecified) of immunization, and quarantine in the event of an outbreak of disease). This argument fails, of course, as compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases. As is noted in the legislative history, studies have found that 'when belief

12

exemptions to vaccination guidelines are permitted, vaccination rates decrease,' and community immunity wanes if large numbers of children do not receive required vaccinations." (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1146.)

Accordingly, plaintiffs' substantive due process claim has no merit.

III

*Right To Privacy*

In their complaint, plaintiffs assert Senate Bill No. 277 infringes on their constitutional right to privacy on two grounds: (1) requiring children to reveal personal medical information to attend a free public school; and (2) requiring parents and children to forego control over the integrity of the children's bodies.

The California Constitution provides that all individuals have a right to privacy, which "protects a larger zone in the area of financial and personal affairs than the federal right." (*Wilson v. California Health Facilities Com.* (1980) 110 Cal.App.3d 317, 324; Cal. Const., art. I, §1.) A person's medical history and information and the right to retain personal control over the integrity of one's body is protected under the right to privacy. (*People v. Martinez* (2001) 88 Cal.App.4th 465, 474-475; *American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 332-333.) Although the right is important, it is not absolute; it "must be balanced against other important interests" and "may be outweighed by supervening public concerns." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37; *Wilson*, at p. 325.)

Section 120325, subdivision (a), states the state's objective is "the eventual achievement of total immunization of appropriate age groups against [specified] childhood diseases." "[W]hen the state asserts important interests in safeguarding health, review is under the rational basis standard. [Citations.] In the area of health and health care legislation, there is a presumption both of constitutional validity and that no violation of privacy has occurred." (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 712.)

13

As our colleagues pointed out in *Brown*, "compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases" and "federal and state courts, beginning with *Abeel*, have held 'either explicitly or implicitly' that 'society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children.' " (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1146.)

The right to privacy, " 'fundamental as it may be, is no more sacred than any of the other fundamental rights that have readily given way to a State's interest in protecting the health and safety of its citizens, and particularly, school children,' and 'removal of the [personal beliefs exemption] is necessary or narrowly drawn to serve the compelling objective of [Senate Bill No.] 277." (*Brown v. Smith*, *supra*, 24 Cal.App.5th at pp. 1146-1147.) Accordingly, Senate Bill No. 277 does not violate plaintiffs' right to privacy. Nothing in plaintiffs' argument convinces us otherwise.

IV

*Right To Attend School*

California has recognized a fundamental interest in education, as provided in its Constitution. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 608-609, superseded by statute on other grounds as stated in *Crawford v. Huntington Beach Union High School Dist.* (2002) 98 Cal.App.4th 1275, 1286; Cal. Const., art. IX, § 5 ["Legislature shall provide for a system of common schools by which a free school shall be kept up and supported"].) Plaintiffs claim four cases "all stand for the principle that the right to a public education cannot be burdened the way it is here" by requiring families to incur "substantial costs for the multitude of doctors' visits," requiring students to relinquish rights to "determine what goes into their bodies and their rights to bodily autonomy," and conditioning a fundamental right on giving up another. Three of the four cases involve actions by

14

school districts, not legislative actions by the state, and are inapplicable.[11]

The fourth case, *Serrano*, also does not support plaintiffs' position. As the *Brown* court explained: "*Serrano* struck down a public school financing scheme as violating equal protection guaranties 'because it discriminated against a fundamental interest -- education -- on the basis of a suspect classification -- district wealth -- and could not be justified by a compelling state interest under the strict scrutiny test thus applicable.' " (*Brown v. Smith*, *supra*, 24 Cal.App.5th at p. 1145.) Like the plaintiffs in *Brown*, the plaintiffs here "cite *Serrano* to support their claim that Senate Bill No. 277 . . . violates their constitutional right to attend school, but fail to explain its application here. There is no 'suspect classification' underlying Senate Bill No. 277." (*Brown*, at p. 1146.) "But even if we assume the strict scrutiny test should be applied to any law affecting the fundamental interest in education, Senate Bill No. 277 . . . would pass that test." (*Ibid.*)

Plaintiffs also rely on *Robbins v. Superior Court* (1985) 38 Cal.3d 199, arguing that, when the government conditions a public benefit on the relinquishment of a right, the government must establish there was no alternative means to meeting its objective. Plaintiffs argue Senate Bill No. 277 does not meet "the *Robbins* test" because there "are several 'available alternative means' to accomplishing the state's goal of higher vaccination r[ate]s without using the public benefit of free K-12 education as the chokepoint." The test discussed in *Robbins* applies to government agency actions, not to

---

[11]     *Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 541 (sole issue was whether petitioners were entitled to attorney fees under Code of Civil Procedure section 1021.5); *Phipps v. Saddleback Valley Unified School Dist.* (1988) 204 Cal.App.3d 1110 (appellate court upheld trial court's issuance of a permanent injunction and attorney fee award in matter involving a child's exclusion from school after testing positive for the Acquired Immune Deficiency Syndrome (AIDS) virus); *Hartzell v. Connell* (1984) 35 Cal.3d 899 (sole issue was whether a public high school district could charge fees for educational programs simply because they had been denominated "extracurricular").

15

state legislative acts. (See *Bagley v. Washington Township Hospital Dist.* (1966) 65 Cal.2d 499, 501.) Indeed, the first factor of the test requires the "government entity seeking to impose the condition [to] demonstrate that . . . the condition reasonably relates to the purposes of the legislation which confers the benefit." (*Long Beach City Employees Assn. v. City of Long Beach* (1986) 41 Cal.3d 937, 959.) State legislative acts, in contrast, are subject to strict scrutiny, intermediate scrutiny, or rational-basis review, depending on the nature of the right involved. (See *Adoption of Kay C.*, *supra*, 228 Cal.App.3d at p. 748.)

We agree with the *Brown* court that Senate Bill No. 277 does not violate the right to attend school. (*Brown v. Smith*, *supra*, 24 Cal.App.5th at pp. 1145-1147.) Indeed, our Supreme Court in 1904 found legislative vaccination requirements do not interfere with this right. (*French v. Davidson* (1904) 143 Cal. 658, 662 ["The legislature no doubt was of the opinion that the proper place to commence in the attempt to prevent the spread of contagion was among the young, where they were kept together in considerable numbers in the same room for long hours each day. . . . [The legislation] in no way interferes with the right of the child to attend school, provided the child complies with its provisions. . . . When we have determined that the act is within the police power of the state, nothing further need be said. The rest is to be left to the discretion of the law-making power. It is for that power to say whether vaccination shall be had as to all school children who have not been vaccinated all the time"].) We decline plaintiffs' invitation to read "*French* as dicta."

V

*Free Exercise Of Religion*

Plaintiffs argue Senate Bill No. 277 violates their right to free exercise of religion. No such cause of action was asserted in their complaint nor were any allegations included

16

in that regard.[12]  While we consider the issue to determine whether plaintiffs should be given leave to amend their complaint, we note plaintiffs cite to only one case in support of their position that Senate Bill No. 277 violates their right to free exercise of religion -- an inapplicable Wyoming Supreme Court case.

We agree with our colleagues' detailed discussion of this issue in *Brown* and their conclusion that Senate Bill No. 277 does not violate the right to free exercise of religion. (*Brown v. Smith*, *supra*, 24 Cal.App.5th at pp. 1144-1145.)

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

/s/_____

Robie, Acting P. J.

We concur:

/s/_____

Mauro, J.

/s/_____

Murray, J.

_____

[12]     In their reply brief, plaintiffs point to one paragraph in their complaint, which they assert "raised the issue of their creeds in their Complaint."  That paragraph states: "California previously allowed children to receive a public-school education without the need for medical treatments if their parents declared a religious or personal belief exemption for such children.  These exemptions allowed those children to attend a K-12 school education within the State of California without undergoing every single medical treatment on California's required list."  Nothing in this paragraph raises a free exercise of religion constitutional challenge to Senate Bill No. 277.

Filed 12/6/18

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| DEVON TORREY LOVE et al., | C086030 |
| Plaintiffs and Appellants, | (Super. Ct. No. SCV0039311) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| STATE DEPARTMENT OF EDUCATION et al., | |
| Defendants and Respondents. | |

THE COURT:

The opinion of this court filed November 20, 2018, was not certified for publication in the Official Reports. For good cause it now appears the opinion should be published in its entirety in the Official Reports and it is so ordered.

BY THE COURT:


 /s/
Robie, Acting P. J.


 /s/
Mauro, J.


 /s/
Murray, J.


1

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of Placer County, Charles D. Wachob, Judge.  Affirmed.

The Hakala Law Group, Brad A. Hakala, Jeffrey B. Compangano, and Ryan N. Ostrowski for Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Julie Weng-Gutierrez, Senior Assistant Attorney General, Richard T. Waldow, Supervising Attorney General, Jonathan E. Rich and Jacquelyn Y. Young, Deputy Attorneys General, for Defendants and Respondents.