Filed 8/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re S.P. et al., Persons Coming Under the Juvenile Court Law. | 2d Juv. No. B302636 (Super. Ct. No. 19JD-00225) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>D.H.,<br><br>    Defendant and Appellant. | |

Does a juvenile court have the authority to order vaccinations for dependent children under its jurisdiction? Yes. Recently enacted Health and Safety Code section 120372, subdivision (d)(3)(C) provides that a state public health officer (SPHO) or a doctor designated by a SPHO "may revoke the medical exemption." Does that statute deprive the juvenile court of that authority? No.

D.H. (Father) appeals an order of the juvenile court following a disposition hearing after the San Luis Obispo County Department of Social Services (DSS) filed a juvenile dependency petition. (Welf. & Inst. Code, § 300, subd. (b)(1).)[1] The order authorized Father's children, S.P. and F.P., dependent children of the juvenile court, to receive vaccinations. The court found vaccination exemptions the children had received earlier invalid. We conclude, among other things, that the juvenile court had the authority to order vaccinations. Nor did it abuse its discretion in doing so. We affirm.

FACTS AND PROCEDURAL HISTORY

On June 4, 2019, DSS filed a juvenile dependency petition (§ 300, subd. (b)(1)), alleging Father and A.P. (Mother) neglected and failed to protect their children, S.P., F.P., and E.P. Mother had a history of substance abuse and mental illness. She had recently given birth to E.P. Both Mother and E.P. had tested positive for methamphetamine and marijuana. DSS alleged Father had a history of substance abuse and mental illness and was recently incarcerated. The juvenile court detained the children and placed them under the custody and control of DSS.

At an August 14, 2019, jurisdiction and disposition hearing, the juvenile court sustained the original petition and an amended petition. It found the children to be dependent children within section 300, subdivision (b). It found continuance of the children at the parents' home would be contrary to the children's welfare. It ordered DSS to provide family reunification services. The court scheduled the case for a six-month review hearing. (§ 366.21, subd. (e).)

_____

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

2

DSS reported to the juvenile court that Dr. Deborah Kronstad, S.P.'s and F.P.'s current treating pediatrician, recommended that the children receive vaccinations. Father and Mother objected. Father told DSS that on March 11, 2018, Dr. Johnnie Ham had issued letters stating his determination the children were exempt from vaccinations. Ham wrote that the children have "a medical reason not to vaccinate," but did not state what that medical reason was.

At a hearing to determine whether the children should be vaccinated, Ham testified he saw the children once in March 2018 for 45 to 60 minutes. He said he is not a pediatrician and did not have medical records from the children's other doctors. His examination was "very brief." He checked the children's temperatures and their eyes and had them move their arms. Ham went on to testify, "Most of what I do in my evaluations is based on history." He said he relies on what the parents tell him about the medical history. His medical records do not include the results of his physical examination. Ham said, "[T]hose physical findings I don't consider to be relevant."

Ham was asked what was the medical condition that supported the exemptions but did not describe that condition. He said, "The law does not require that the child have a medical condition. . . . [It] allows us to consider both the individual's medical history as well as family history." In response to a question about the children's medical condition that supported an exemption, Ham responded, "I did not see a medical condition directly with either child." The parents said members of the family have had "allergies," "asthma," "autoimmune disease," and "mental disorders, including autism." One family member had "a negative vaccine reaction."

3

Ham was asked, "Are you aware that the safety for vaccinations is considered reliable?" Ham: "No, I'm not aware of that." In 2018, Ham issued 350 exemptions. For two children, he charges a $290 fee for an exemption examination.

The juvenile court declared Ham's vaccination exemptions to be "NULL and VOID." It ruled they were not supported by any valid medical examinations.

DISCUSSION

*Mootness*

DSS contends the issue whether the juvenile court's order to have the children vaccinated is moot. The children "have already received some, if not all, of the immunizations which are currently due to them *at this time*." (Italics added.)

" ' "[A]s a general rule, it is not within the function of the court to act upon or decide a moot question . . . ." ' " (*In re I.A.* (2011) 201 Cal.App.4th 1484, 1490.) Courts do not decide issues that can provide no effective relief for the parties or will have no impact on their future rights. (*Id.* at p. 1492.) But exemption from vaccinations is a recurrent issue. Children will often be subject to vaccinations on a periodic or yearly basis. This issue will continue to affect the rights of parties in dependency proceedings.

*The Court's Authority to Order Vaccinations*

Father contends the juvenile court had no legal authority to revoke the vaccination exemptions issued by Ham in 2018 and then order S.P. and F.P. to be vaccinated. We disagree.

" 'When a child is adjudged a dependent child of the court on the ground that the child is a person described by Section 300, the court may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the

4

child, *including medical treatment . . . .'*" (*In re Christopher I.* (2003) 106 Cal.App.4th 533, 554-555, italics added.)

"[P]rovisions of the Welfare and Institutions Code illustrate the juvenile court's authority to make all reasonable orders relating to medical treatment for a dependent child. *No statute restricts that authority.*" (*In re Christopher I., supra,* 106 Cal.App.4th at p. 555, italics added.) Consequently, the court has authority "to obtain care – including medical care – in the dependent child's best interests and consistent with what the parents should have obtained or authorized." (*Ibid.*)

Father concedes that the juvenile court generally appears "to have complete authority" to "order that the children . . . get vaccinated." But he contends it does not have authority to vacate an exemption to vaccinations that a doctor previously issued. He relies on Ham's 2018 letters exempting the children "from any vaccinations." He challenges the court's finding that the exemptions were null and void.

But the most relevant issue in the juvenile court's ruling was whether the children *at the current time needed vaccinations.* The court found they did. It said, "The physicians(s) retained by the Social Services Department recommended a series of vaccinations for each child *for their protection . . . .*" (Italics added.) The court ordered "that the children . . . get vaccinated" because it was medically necessary. Because the court had inherent authority to decide whether dependent children should be vaccinated (*In re Christopher I, supra,* 106 Cal.App.4th at pp. 556-557), it necessarily had authority to decide all objections to vaccinations, including exemptions.

Evidence in the record supports the juvenile court's finding that the children needed vaccinations. At the August 14, 2019,

5

hearing, the DSS social worker testified that *both* S.P.'s and F.P.'s "pediatricians are recommending that they receive their vaccinations."

DSS also submitted letters from Dr. Kronstad, a current treating doctor of the children. She was a board-certified pediatrician. She stated, "[N]o medical condition *currently exists* that would prevent [the children] from receiving vaccinations as recommended by the [American Academy of Pediatrics] and CDC." (Italics added.) She described the specific vaccinations that S.P. and F.P. needed to bring them "up to date" on their vaccines. She set forth a timetable for the specific types of shots they needed and the time periods during which they had to be administered. This was strong evidence to support findings that the children needed vaccinations and the exemptions were not currently valid. There is usually "no better evidence of the state of one's health" than the medical opinions from the patient's current treating doctor. (*Gunn v. Employment Development Dept.* (1979) 94 Cal.App.3d 658, 664, fn. 6.)

Father notes that a recently passed statute provides that a state public health officer (SPHO) or a doctor designated by a SPHO "may revoke the medical exemption." (Health & Saf. Code, § 120372, subd. (d)(3)(C).) He argues this means the juvenile court does not have authority to revoke an exemption. We disagree.

"Statues should be given a construction consistent with the legislative purpose . . . ." (*Silberman v. Swoap* (1975) 50 Cal.App.3d 568, 571.) The Legislature was concerned with the public health consequences of doctors issuing improper exemptions. Section 120372 increases the number of people who have authority to revoke exemptions. It does not preclude a court

6

from taking appropriate action where the evidence demonstrates the exemption was fraudulent or without foundation. To conclude otherwise would divest the court's authority and could endanger the children's health. There is no statutory bar to preclude the juvenile court from ordering dependent children to receive medically necessary vaccinations. (*In re Christopher I.*, *supra*, 106 Cal.App.4th at p. 555.)

### *Rejecting Ham's Testimony and Exemptions*

Father contends the juvenile court erred in not accepting Ham's testimony and then deciding to reject the vaccination exemptions. But the court had valid reasons to reject both. As DSS notes, Ham's exemption letters failed to comply with statutory requirements. The letters only state that the children have "a medical reason not to vaccinate." But the statute requires that the exemption letter must specify "the specific nature . . . of the medical condition." (Health & Saf. Code, § 120370, subd. (a)(1).) In addition, 1) Ham was not a pediatrician, 2) he was not one of the children's *current treating doctors*, and 3) his 2018 letters did not include descriptions of the children's current medical needs.

Moreover, the juvenile court's findings indicate that it implicitly determined Ham was not a credible witness. "Credibility of witnesses and weight of the evidence are matters for the trier of fact." (*Biren v. Equality Emergency Medical Group, Inc.* (2002) 102 Cal.App.4th 125, 143.) We may not consider testimony the juvenile court rejected as not credible. (*Ibid.*)

The juvenile court said, "The reality is that Dr. Ham issued the exemption on March 11, 2018, after receiving a request for an exemption *supported solely by an uncorroborated or unverified*

7

*family history provided by the parents*, *and without* anything resembling *a medical evaluation or examination* of the minors." (Italics added.) "[Ham] does not take any blood or tissue samples or anything of that nature. He does not conduct any neurological exam. . . . He testified that *neither child had an existing medical condition at the time of his examination.*" (Italics added.) The court concluded, "To rely solely on the information provided by a parent (the 'family history') without any rudimentary medical evaluation is simply *ripe for abuse and patently wrong.*" (Italics added.)

Ham testified, "Most of what I do in my evaluations is based on history." But he admitted he did not have *any medical records* to document that history from the children's other doctors at the time he issued the exemptions. He was asked if the results of his medical exam of S.P. "are in the medical record." He answered, "They are not there because those physical findings I don't consider to be relevant . . . ." He expressed the view that "vaccines are dangerous and unsafe." This view has been rejected by the courts. (*Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1143.) " '[C]ompulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases.' " (*Love v. State Dept. of Education* (2018) 29 Cal.App.5th 980, 993.) It ensures the health and safety of children. (*Id.* at p. 990.) A major cause for the spread of disease is the presence of a significant number of children who have not been vaccinated. (*Id.* at p. 987.) In 2018 alone, Ham issued 350 vaccination exemptions. He charged a fee for each exemption. DSS believed Ham issued questionable exemptions. It acted properly by bringing this issue to the court.

Ham testified that he had been disciplined by the Medical Board of California for "providing false documentation" and that he was on probation for 10 years. Father, citing Health and Safety Code section 120372, subdivision (d)(4), (7)(C), argues this discipline does not invalidate Ham's 2018 exemptions because the discipline was "unrelated to issuing medical exemptions." But even if so, Father has not shown why the juvenile court could not consider this evidence in evaluating Ham's credibility.

The juvenile court could reasonably find Ham did not know the children's current need for vaccinations. Ham was not a treating doctor, not a pediatrician, had only briefly seen the children on one occasion one-and-one-half years ago, and did not have medical records documenting their medical histories before he made his 2018 exemptions. Even without deciding whether the 2018 exemptions were valid, the court could alternatively find they were not currently relevant.

We have reviewed Father's remaining contentions and conclude he has not shown grounds for reversal.

DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION.


GILBERT, P. J.

We concur:


YEGAN, J.          PERREN, J.


9

Charles S. Crandall, Roger T. Picquet, Judges

Superior Court County of San Luis Obispo

_____

Jesse F. Rodriguez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rita L. Neal, County Counsel, and Chelsea K. Kuhns, Deputy, for Plaintiff and Respondent.