Filed 2/5/24  Ramirez v. Razo CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FERNANDO RAMIREZ, | B326839 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. 22STCV16668 |
| v. | |
| NICHOLAS RAZO et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed in part, reversed in part.

Mahoney & Soll, Paul M. Mahoney, and Ryan P. Mahoney for Plaintiff and Appellant.

Doumanian & Associates and Nancy P. Doumanian for Defendants and Respondents.

_____

# INTRODUCTION

Plaintiff Fernando Ramirez appeals a judgment of the trial court dismissing defendants Rene Bobadilla, city manager of the City of Montebello (the City), and Nicholas Razo, director of human resources for the City (together, the Individual Defendants), after it sustained the Individual Defendants' demurrer to Ramirez's complaint without leave to amend as to the intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and invasion of privacy causes of actions alleged against the Individual Defendants.[1] Ramirez was an employee of the City who was denied a religious exemption to the City's resolution mandating Covid-19 vaccination for all City employees and was terminated for his unwillingness to be vaccinated. Ramirez also alleges that the City and Individual Defendants intentionally sent his termination notice, which disclosed his vaccination status, to Ramirez's brother in an envelope addressed to his brother.

We conclude that the court erred in sustaining the demurrer as to the invasion of privacy cause of action but did not err in sustaining the demurrer to the IIED and NIED causes of action without leave to amend. Thus, we affirm in part and reverse in part.

---

[1] The complaint also alleged causes of action against the City, which were overruled in part. The City is not a party to this appeal.

# FACTS AND PROCEDURAL BACKGROUND

## 1. Allegations of the Complaint

In 2004, the City hired Ramirez as a part time bus driver. The City promoted him to full time bus driver in 2011 and to supervisor in 2012.

In March 2020, Governor Gavin Newsom implemented California Executive Order N-33-20, which ordered "all individuals living in the State to remain at home with the exception of accessing food and medicine and those deemed essential workers." Ramirez was deemed an essential worker and continued to work through the Covid-19 pandemic.

In August 2021, the City announced a plan, which was implemented by Bobadilla, to enact a vaccine mandate for its employees. It subsequently distributed its written policy and the process for claiming a religious exemption to the policy.

Shortly after receiving this information, Ramirez[2] submitted a written application for a religious exemption describing his religious objections to the vaccine mandate. Ramirez stated that he objected "due to his sincere religious beliefs and specifically his interpretation of the Bible," as well as "on the grounds that the vaccines were developed with the assistance of stem cells taken from aborted fetuses."

Ramirez was ordered to participate in an interview with the City human resources director, Razo, in connection with his application. Prior to the interview, Razo told Ramirez that there were a fixed number of exemptions (1 percent) that would be

---

[2] The complaint contains multiple references to "Martinez," which we presume were intended to refer to Ramirez.

granted. The City denied Ramirez's exemption request and sent him a rejection letter, which stated: "While your Request includes references to your overall religious faith and citation to Christian biblical passages, your Request does not identify any religious doctrine or teaching that directly prohibits or discourages you from obtaining a Covid-19 vaccine." Razo did not specifically ask Ramirez what religious doctrines prevented him from complying with the mandate.

Ramirez appealed the decision and wrote several letters to the City that further explained his religious objections. The City did not respond to the letters.

When Ramirez reported to work on December 16, 2021, he was escorted out of the building for failure to comply with the vaccine mandate. He received a notice of intent to terminate on or about that same date. The notice was sent to his brother's address in an envelope addressed to his brother.

The complaint asserted causes of action for religious discrimination in violation of the Fair Employment and Housing Act, Government Code[3] section 12900 et seq. (FEHA), and wrongful termination in violation of a binding memorandum of understanding against the City, which are not at issue in this appeal. The complaint also alleged IIED, NIED, and invasion of privacy causes of action against the City and the Individual Defendants.

With respect to the IIED cause of action, the complaint alleged that Razo and Bobadilla "devised an illegal scheme to deprive Ramirez of his protected religious rights," "knowingly subjected him to a rigged interview process and knew beforehand

---

[3] All undesignated statutory references are to the Government Code.

that they were going to violate Ramirez's religious rights," and "knowingly and intentionally exposed Ramirez's private medical vaccination status, and the facts regarding [his] termination, by intentionally sending the City's termination letter to Ramirez's brother."

The complaint further alleged, with respect to the NIED cause of action, that the City and Individual Defendants negligently inflicted severe emotional distress upon him by "forc[ing]" him out of his job "due to a shameful and rigged process" and "knowingly and intentionally" disclosing his vaccination and employment status to a third party.

Finally, the complaint alleged that "Ramirez's employment status, and his vaccination status, were intensely private matters" and the City and Individual Defendants violated his constitutional right to privacy "by intentionally mailing Ramirez's vaccination and employment status to his brother."

## 2.    Procedural Background

Ramirez filed his complaint in May 2022. In July 2022, the Individual Defendants moved to strike the complaint and filed a demurrer to the complaint in which they argued: (1) that the IIED, NIED, and invasion of privacy claims were barred or failed as a matter of law because the Individual Defendants are immune from liability pursuant to sections 821, 820.2, 8655, and 8660; (2) the claims were not grounded in statute as required by section 815; and (3) Ramirez had failed to plead facts speaking to malice, oppression, fraud, outrageous conduct, or conduct that exceeds all bounds of decency. Ramirez opposed the motion and demurrer.

The court sustained the Individual Defendants' demurrer as to the IIED cause of action without leave to amend because

5

"[a]ny claims regarding the process of seeking a religious exemption concern management decisions" and "were not designed intentionally or specifically by the City or the Individual Defendants to cause plaintiff any type of distress here, particularly intentional infliction of emotion[al] distress." There were also "no facts pleaded upon which plaintiff can base an inference of 'intent' " with regard to mailing the termination notice to Ramirez's brother. With respect to the NIED cause of action, the court concluded "it is textbook law that there is no such cause of action in this context" and "[t]his type of cause of action is only applicable to bystander distress." The court further held that the allegation was unsupported by factual allegations and sustained the demurrer without leave to amend. Finally, with respect to invasion of privacy, the court noted that "[t]here is no present California authority for the proposition that there is a medical right to privacy regarding immunization," citing *Love v. State Dept. of Education* (2018) 29 Cal.App.5th 980 (*Love*) and therefore sustained that cause of action without leave to amend.

Although Ramirez was not given leave to amend these causes of action, he repeated each of the allegations contained in the original complaint in his first amended complaint "for purposes of appellate review." The Individual Defendants demurred to the first amended complaint on this ground. The court struck these allegations on the ground that they were sustained without leave to amend and entered an order of dismissal for the Individual Defendants on January 4, 2023. Ramirez timely appealed.

## DISCUSSION

Ramirez contends that the Individual Defendants are not entitled to statutory immunity under sections 820.2 or 821. He argues that FEHA does not foreclose his IIED cause of action against the Individual Defendants for their handling of the religious exemption process and termination of his employment, and that he adequately alleged the elements of IIED. Ramirez further asserts that the court erred in concluding that a NIED cause of action can be based only on bystander distress and contends that the complaint alleges, or could be amended to allege, sufficient facts establishing that the Individual Defendants owed a duty to him. Finally, Ramirez contends that he adequately alleged a cause of action for invasion of the constitutional right to privacy and that the court erred in concluding that he had no privacy right to his vaccination status.[4]

In addition to asserting immunity under sections 820.2 and 821, the Individual Defendants contend that the demurrer was properly sustained because they have immunity under sections 815 and 821. They further argue that the Individual Defendants' acts in implementing the vaccine mandate, engaging in the exemption process with Ramirez, and terminating Ramirez were personnel management actions, and that they cannot be held personally liable for discrimination in connection with those actions. The Individual Defendants further contend that the compelling interest of public entities in stemming the spread of Covid-19 "justifies any invasion of [Ramirez's] privacy."

---

[4] Ramirez also contends that the City's argument that FEHA was suspended was unsupported. As the City is not a party to the appeal, we do not address this contention.

## 1. Standards of Review

"[A] demurrer accepts as true all well-pleaded facts and those facts of which the court can take judicial notice but not deductions, contentions, or conclusions of law or fact." (*Fox v. JAMDAT Mobile, Inc.* (2010) 185 Cal.App.4th 1068, 1078.) "We review de novo an order sustaining a demurrer. [Citation.] . . . In deciding whether a demurrer was properly sustained, '[w]e are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale.' [Citation.]" (*Center for Environmental Health v. Perrigo Co.* (2023) 89 Cal.App.5th 1, 16.)

"A trial court's decision to deny leave to amend will be left undisturbed unless we conclude that there was an abuse of discretion." (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.) "If a complaint does not state a cause of action, but there is a reasonable possibility that the defect can be cured by amendment, leave to amend must be granted." (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 39.) "Contrary to long-standing rules generally precluding a party from changing the theory of the case on appeal [citations], a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' [citation] in not granting leave to amend." (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.) "The plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading' " (*ibid.*) and the burden of establishing that there is a reasonable possibility that the complaint could be amended to state a cause of action "is

8

squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

**2.    The Individual Defendants cannot establish that they are entitled to statutory immunity under the allegations of the complaint.**

The Individual Defendants contend, and Ramirez refutes, that they are immune from liability under sections 815, 818.2, 820.2, and 821. Because the Individual Defendants assert statutory immunity as a complete defense to the claims against them, we consider these arguments first.

Section 815, subdivision (a), provides: "Except as otherwise provided by statute, a public entity is not liable for an injury whether such injury arises out of an act or omission of the public entity or a public employee or any other person." Although this section clearly bars tort claims against the City for which there is not statutory authority, the Individual Defendants are not public entities. Section 820, subdivision (a), states: "Except as otherwise provided by statute (including Section 820.2), a public employee is liable for injury caused by his act or omission to the same extent as a private person." Thus, the Government Claims Act (§ 810 et seq.) " 'establishes the basic rules that public entities are immune from [noncontractual] liability except as provided by statute (§ 815, subd. (a)), [and] that public employees are liable for their torts except as otherwise provided by statute (§ 820, subd. (a)).' " (*Greenwood v. City of Los Angeles* (2023) 89 Cal.App.5th 851, 857–858, quoting *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*).) In other words, "[w]hen it comes to tort suits against public employees, ' "the rule is liability, immunity is the exception." [Citation.]' [Citations.]" (*Freeny v. City of San Buenaventura* (2013) 216 Cal.App.4th 1333, 1341.)

We therefore reject the Individual Defendants' assertion that the demurrer was properly sustained under section 815. Similarly, because section 818.2 provides that "[a] public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law," we reject the Individual Defendants' assertion that they are entitled to statutory immunity under this provision. However, we consider whether the Individual Defendants can establish that they are entitled to immunity as a matter of law under sections 820.2 and 821, which are exceptions applicable to public employees.

### 2.1. Section 820.2

Section 820.2 provides: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." In determining whether a public employee's act is "discretionary" under section 820.2, courts distinguish between the employee's operational and policy decisions. (See *Caldwell*, *supra*, 10 Cal.4th at p. 981.) Immunity is reserved for " '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.' " (*Ibid.*, quoting *Johnson v. State* (1968) 69 Cal.2d 782, 793.) However, "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated. [Citation.] . . . [I]mmunity applies only to *deliberate and considered* policy decisions, in which a '[conscious] balancing [of] risks and advantages . . . took place.' " (*Caldwell*, at p. 981, quoting *Johnson*, at pp. 794, fn. 8 & 796.)

10

" '[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place. The fact that an employee normally engages in "discretionary activity" is irrelevant if, in a given case, the employee did not render a considered decision' [citation]. Such a showing . . . could not have been made . . . at the demurrer stage." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 794; accord, *Zuniga v. Housing Authority* (1995) 41 Cal.App.4th 82, 98–99 [claim of immunity cannot be resolved on demurrer absent allegations that, on their face, establish the existence of governmental immunity by describing decision-making process involved in allegedly wrongful decision], abrogated on another ground by *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112.) The burden of proof to show that discretionary immunity applies is on the public entity claiming the immunity. (*Lopez*, at p. 794.)

Although the Supreme Court indicated that immunity under section 820.2 generally cannot be established at the demurrer stage, it concluded that the allegations of the complaint in *Caldwell* established that the defendants' acts were covered by section 820.2. In *Caldwell*, a school superintendent, who was allegedly terminated on racial grounds, filed a complaint against the members of the school board who had voted to terminate him. (*Caldwell, supra,* 10 Cal.4th at pp. 976–977.) The Supreme Court held that allegations in the complaint regarding the acts of a school board in voting to terminate sufficiently described discretionary acts that were immune under section 820.2 under the parameters set forth in *Johnson*. It concluded that "[a] fair reading of the instant complaint reveals allegations that the Board made an *actual, conscious, and considered* collective policy

11

decision to replace plaintiff as superintendent. The complaint admits of no theory that the Board acted unconsciously or failed to weigh pros and cons. On the contrary, it asserts that Board members did purposefully employ standards they deemed relevant, but that the standards employed were wrong and impermissible." (*Caldwell*, at p. 984.) The court further held that "claims of *improper* evaluation cannot divest a discretionary policy decision of its immunity." (*Ibid.*)

Here, the facts alleged in the complaint do not, on their face, disclose facts demonstrating that the Individual Defendants engaged in a conscious balancing of the risks and advantages sufficient to trigger immunity. The complaint alleged that Razo told Ramirez that there were a fixed number of exemptions (1 percent) that would be granted and that the Individual Defendants "knowingly subjected him to a rigged interview process and knew beforehand that they were going to violate Ramirez's religious rights." Thus, the complaint alleges that, in refusing Ramirez the religious exemption, the Individual Defendants "merely implement[ed] a basic policy already formulated" and did not engage in a conscious balancing. (*Caldwell*, *supra*, 10 Cal.4th at p. 981.) At this stage, we cannot conclude that the Individual Defendants proved that they acted in a discretionary manner.

Moreover, although the denial of a religious exemption and termination of Ramirez's employment could be an appropriate exercise of discretion vested in them, the Individual Defendants do not argue that the alleged intentional disclosure of Ramirez's vaccination status and the fact that his employment was terminated to a third party was an exercise of the discretion vested in them.

12

### 2.2. Section 821

Section 821 states: "A public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment." Ramirez argues that the complaint did not challenge the adoption of the mandate or the failure to adopt one, but religious discrimination in its implementation. He argues that the 1 percent rule to which Razo admitted was not part of the vaccine mandate policy and thus section 821 does not apply.

"As the Supreme Court has explained, Government Code section 818.2 [the companion section to section 821] was intended to provide immunity for legislative and quasi-legislative action and to protect the exercise of discretion by law enforcement officers in carrying out their duties." (*Guzman v. County of Monterey* (2009) 178 Cal.App.4th 983, 996; see also *Wood v. County of San Joaquin* (2003) 111 Cal.App.4th 960, 972 ["This immunity is necessary to protect the essential governmental function of making laws, so that the judiciary does not question the wisdom of every legislative decision through tort litigation."].)

The Individual Defendants cite *Nunn v. State of California* (1984) 35 Cal.3d 616 to support their claim that section 821 applies here. In *Nunn*, the plaintiff's decedent was fatally shot while patrolling a manufacturing plant in the course and scope of his employment as a uniformed security guard and the complaint alleged that the State and the individual defendant, chief of the Bureau of Collection and Investigative Services, negligently delayed the promulgation of regulations governing a course of instruction in firearms use for employees of licensed private patrol agencies. (*Id.* at p. 620.) The Supreme Court explained that "[t]he immunity afforded by Government Code sections 818.2

13

and 821 attaches only to discretionary functions." (*Id.* at p. 622.) It concluded that the promulgation of regulations consistent with a Business and Professions Code section requiring that security guards complete a course of training in the carrying and use of firearms "necessarily involve[d] 'planning' rather than nondiscretionary 'operational' or 'street level' decisions" and that "the quasi-legislative implementation of basic legislative decision is protected." (*Ibid.*) The court stated that "the formulation of regulations involved holding public hearings and the review of public comments," during which the Bureau was "presented with two contending interests requiring judgment": its "interest in having maximum input into the drafting of the regulations in order to ensure their adequacy" and "the necessity of implementing regulations as soon as possible in order that the required courses could be provided." (*Id.* at p. 623.) "Subjecting the Bureau to the possibility of tort liability for its exercise of discretion in accommodating these contending interests would interfere with the Bureau's deliberative process." (*Ibid.*) The Supreme Court therefore held that the immunity of sections 818.2 and 821 attached to the defendants. (*Id.* at p. 626.)

The Individual Defendants' denial of Ramirez's request for a religious exemption does not appear to be the legislative or quasi-legislative actions of adopting or failing to adopt an enactment, as in *Nunn*, or a failure to enforce an enactment, but the *enforcement* of an enactment, which is not described under sections 818.2 and 821. *Carroll v. City and County of San Francisco* (2019) 41 Cal.App.5th 805 supports the conclusion that the enforcement of an enactment is not covered by these sections. In *Carroll*, the court concluded that the defendants were not entitled to immunity under section 818.2 where the plaintiff

14

alleged "that defendants 'enacted, implemented, and enforced the unlawfully discriminatory retirement provisions at issue here' " because the injury she alleged did not arise from the adoption of the relevant city charter section "but instead from the defendants' subsequent enforcement of this provision with respect to her." (*Carroll,* at p. 824.) It observed that "[s]ection 818.2 does not immunize public entities from damages that result from injuries that arise from the enforcement of a law." (*Ibid.*) The *Carroll* court explained that, in *Nunn*, "the Supreme Court distinguished cases where the plaintiff's alleged injury arose from nondiscretionary, operational acts implementing policy decisions" and that "governmental immunity applied in *Nunn* only because the implementation that caused injury involved quasi-legislative discretionary acts." (*Id.* at p. 825.) Unlike in *Nunn*, the plaintiff in *Carroll* did "not allege that defendants took any legislative or quasi-legislative acts in granting her retirement and enforcing the Charter." (*Ibid.*) "Thus, on the face of her complaint, the injury that plaintiff alleges arising from these acts is not subject to section 818.2 immunity." (*Ibid.*)

The allegations of the complaint in this case are more similar to those in *Carroll* than to those in *Nunn*. Although *Carroll* concerned a claim of immunity under section 818.2 only, the parallel language of the provisions renders its reasoning equally applicable to section 821. Thus, we conclude that section 821 also does not immunize public employees from damages that result from injuries that arise from the enforcement of a law or policy. (*Carroll v. City and County of San Francisco, supra*, 41 Cal.App.5th at p. 824.) Even if that were not the case, the allegations of the complaint do not support that, in deciding whether to grant Ramirez a religious exemption, the Individual

Defendants weighed competing interests, as the promulgation of regulations required the defendants to do in *Nunn*. Thus, the Individual Defendants cannot establish that they are entitled to immunity under section 821 under the allegations of the complaint.

We therefore conclude that the affirmative defense of statutory immunity cannot be established on a demurrer in this matter.

**3. Ramirez cannot hold Individual Defendants liable for conduct premised on discrimination in the religious exemption process.**

The Individual Defendants further contend that they cannot be liable for claims of discrimination under FEHA. The cause of action for religious discrimination in violation of FEHA was asserted against the City of Montebello only. There was never any assertion in the complaint that the Individual Defendants were liable under FEHA. However, they further argue that, for the same reason a claim against them under FEHA for employment discrimination must fail, "necessary personnel management actions . . . cannot be the basis of a tort claim either." They rely on *Reno v. Baird* (1998) 18 Cal.4th 640 and *Janken v. GM Hughes Electronics* (1996) 46 Cal.App.4th 55 (*Janken*) for this proposition. It is likely that the court also relied on these authorities in concluding that the IIED cause of action failed with respect to "[a]ny claims regarding the process of seeking a religious exemption" because they "concern[ed] management decisions."

A tort claim against supervisory employees premised on employment discrimination, rather than harassment, is generally not viable. The court in *Janken* explained that "harassment

16

consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives. Harassment is not conduct of a type necessary for management of the employer's business or performance of the supervisory employee's job." (*Janken, supra*, 46 Cal.App.4th at p. 63.) "Discrimination claims, by contrast, arise out of the performance of necessary personnel management duties. While harassment is not a type of conduct necessary to personnel management, making decisions is a type of conduct essential to personnel management. While it is possible to avoid making personnel decisions on a prohibited discriminatory basis, it is not possible either to avoid making personnel decisions or to prevent the claim that those decisions were discriminatory." (*Id.* at pp. 63–64.) The *Janken* court observed that, under FEHA, it is unlawful for an employer to discriminate and unlawful for an employer *or any other person* to harass, which "suggests that liability for harassment is broader than liability for discrimination" and that "[l]iability for discrimination, by contrast, is limited to the 'employer' only." (*Id.* at p. 65.) The court rejected the contention that individual supervisory employees are at risk of personal liability for age discrimination on the theory that individual supervisory employees are agents of employers, and thus are themselves "employers." (*Id.* at p. 66.)[5]

---

[5] In *Reno v. Baird, supra*, 18 Cal.4th 640, the Supreme Court adopted the *Janken* court's distinction between discrimination and harassment under FEHA (*id.* at pp. 645–647), as well as its analysis of whether the agent language in FEHA did not subject supervisory employees to liability for discrimination. (*Id.* at pp. 647–650.) The court found criticism of the *Janken* decision to be "unpersuasive" (*id.* at p. 656) and concluded "that individuals who do not themselves qualify as

Applying these principles to the case before it, the *Janken* court concluded that the factual allegations against the supervisory employees pleaded claims of discrimination, not harassment. "All the actions alleged . . . [were] within the realm of properly delegated personnel management authority" and "would be unlawful only if motivated by prohibited discriminatory considerations." (*Janken*, *supra*, 46 Cal.App.4th at p. 79.) Because it "concluded that only employers—and not individual supervisory employees—are at risk of liability for discrimination . . . the trial court was correct in dismissing the individual supervisory employees." (*Id.* at p. 80.) The court further held that the IIED cause of action alleged against the individual supervisory employee defendants failed "for similar reasons." (*Ibid.*) "An essential element of such a claim is a pleading of outrageous conduct beyond the bounds of human decency. [Citations.] Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination." (*Ibid.*; see also *Smith v. International Brotherhood of Electrical Workers* (2003) 109 Cal.App.4th 1637, 1658 [because a defendant supervisor could not be personally liable for discrimination-based employment

---

employers may not be sued under the FEHA for alleged discriminatory acts." (*Id.* at p. 663.)

18

claims, "it follows he cannot be held liable for the emotional distress claims either"].)

Here, the Individual Defendants' denial of a religious exemption and their termination of Ramirez would be unlawful only if motivated by prohibited discriminatory considerations. The case on which Ramirez relies in arguing that *Janken* does not control here is inapposite: *Huynh v. Vu* (2003) 111 Cal.App.4th 1183 concerned the manager's privilege with respect to a claim for tortious interference with a contract, not emotional distress claims premised on employment discrimination.[6] Thus, under *Janken*, we conclude that Ramirez cannot state emotional distress claims against the Individual Defendants for their handling of the exemption process and their decision to terminate him, which were personnel management decisions.[7]

However, Ramirez further alleged that the Individual Defendants intentionally sent his termination notice disclosing his vaccination status to his brother's address in an envelope addressed to his brother. Although the mailing of a termination

---

[6] Ramirez also cites "*Mariano v. United Parcel Service, Inc.* (S.D. Cal. 2018)" in his opening and reply briefs for the proposition that there is no managerial immunity with respect to an IIED cause of action, but fails to include any further identifying information, much less any citations to the pertinent portions of that decision. Thus, his assertion is forfeited. (See *Handyman Connection of Sacramento, Inc. v. Sands* (2004) 123 Cal.App.4th 867, 880, fn. 14 [declining to consider point where the plaintiff failed to provide a pin cite supporting its assertion].)

[7] Accordingly, we need not address the Individual Defendants' further contention that Ramirez's "emotional distress claims relating to the vaccine mandate are barred by the exclusive remedy provisions of worker's compensation [law]."

notice to an employee falls "within the realm of properly delegated personnel management authority" (*Janken, supra,* 46 Cal.App.4th at p. 79), the Individual Defendants fail to explain how the intentional act of informing a third party of both the fact of an employee's termination and his vaccination status falls within the scope of necessary job performance. Accepting the factual allegations of the complaint as true, as we must, we are not persuaded that FEHA precludes personal liability with respect to Ramirez's IIED, NIED, or invasion of privacy causes of action with respect to this alleged conduct.

**4.    Whether an invasion of privacy occurred under the allegations of the complaint cannot be resolved on a demurrer.**

Where a claim for emotional distress is predicated upon a claim of invasion of privacy, to maintain the cause of action, the plaintiff must establish his or her privacy was invaded. (*Hendrickson v. California Newspapers, Inc.* (1975) 48 Cal.App.3d 59, 61.) Thus, we consider whether the complaint adequately alleged the invasion of privacy cause of action before turning to the causes of action premised on emotional distress.

Article 1, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." "In *Hill* [*v. National Collegiate Athletic Assn.* (1994)] 7 Cal.4th 1 [(*Hill*)], [the Supreme Court] set forth a framework for analyzing constitutional privacy claims. '[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected

20

privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. [¶] . . . [¶] A defendant may prevail in a state constitutional privacy case by negating any of the three elements just discussed or by pleading and proving, as an affirmative defense, that the invasion of privacy is justified because it substantively furthers one or more countervailing interests. The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests.' [Citation.] The standard for evaluating the justification for a privacy invasion depends on 'the specific kind of privacy interest involved and the nature and seriousness of the invasion and any countervailing interests.' [Citation.] 'Where the case involves an obvious invasion of an interest fundamental to personal autonomy, . . . a "compelling interest" must be present to overcome the vital privacy interest. If, in contrast, the privacy interest is less central, or in bona fide dispute, general balancing tests are employed.' [Citation.]" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 769.)

### 4.1. The court erred in holding that the right to privacy does not extend to Ramirez's personal medical information.

The complaint alleged that "Ramirez enjoyed a legally protected right to maintain the privacy of his medical status as to vaccination, and his employment status." On appeal, Ramirez focuses his arguments on the right to privacy with respect to his medical information and does not identify any authority supporting a privacy right as to employment status. Thus, we consider only whether the alleged right to privacy as to

21

vaccination status is recognized under California law. "Whether a legally recognized privacy interest is present in a given case is a question of law to be decided by the court." (*Hill*, *supra*, 7 Cal.4th 1, 40.)

The court cited *Love*, *supra*, 29 Cal.App.5th 980 for the proposition that there is no recognized medical right to privacy with respect to immunization status. In *Love*, the plaintiffs contended that a senate bill infringed their constitutional right to privacy on two grounds: "(1) requiring children to reveal personal medical information to attend a free public school; and (2) requiring parents and children to forego control over the integrity of the children's bodies." (*Id*. at p. 993.) The court explained: "The California Constitution provides that all individuals have a right to privacy, which 'protects a larger zone in the area of financial and personal affairs than the federal right.' [Citations.] A person's medical history and information and the right to retain personal control over the integrity of one's body is protected under the right to privacy. [Citations.] Although the right is important, it is not absolute; it 'must be balanced against other important interests' and 'may be outweighed by supervening public concerns.' [Citations.]" (*Ibid*.) The *Love* court noted that " 'compulsory immunization has long been recognized as the gold standard for preventing the spread of contagious diseases' and 'federal and state courts . . . have held "either explicitly or implicitly" that "society has a compelling interest in fighting the spread of contagious diseases through mandatory vaccination of school-aged children." ' [Citation.]" (*Id*. at pp. 993–994.) It concluded that the senate bill at issue did not violate the plaintiffs' right to privacy because that right, " ' "fundamental as it may be, is no more sacred than any of the other fundamental

rights that have readily given way to a State's interest in protecting the health and safety of its citizens, and particularly, school children," and "removal of the [personal beliefs exemption] is necessary or narrowly drawn to serve the compelling objective of [Senate Bill No.] 277." ' [Citation.]" (*Id.* at p. 994.)

Thus, the *Love* court recognized that the right to privacy with respect to medical information, including immunization status, was not absolute; it did not hold that no such right exists. Instead, it expressly recognized that "[a] person's medical history and information" *are* protected under the right to privacy and that this right is "important." (*Love*, *supra*, 29 Cal.App.5th at p. 993; accord, *Hill*, *supra*, 7 Cal.4th at p. 41 ["information about the internal medical state of an athlete's body . . . is regarded as personal and confidential"].) The Individual Defendants do not appear to defend the court's conclusion that Ramirez had no right to privacy with respect to his medical information, including immunization status. The court therefore erred in sustaining the demurrer on the ground that Ramirez had no right to privacy with respect to his vaccination status.

### 4.2. Whether Ramirez had a reasonable right to privacy with respect to his immunization status and whether the invasion of privacy was sufficiently serious involve questions of fact.

The complaint alleges that Ramirez had a reasonable expectation of privacy and that the Individual Defendants violated that right by intentionally mailing Ramirez's vaccination and employment status to his brother, and thus facially pleads the remaining elements of an invasion of privacy cause of action. The Individual Defendants advance no argument to the contrary. Rather, they contend that Ramirez "failed to state whether the

23

city compelled him to receive COVID-19 vaccination" and thus cannot state a claim for invasion of his privacy rights. However, his claim is premised on the disclosure of his vaccination status to a third party, not the vaccine mandate. The Individual Defendants further argue that, even assuming that Ramirez alleged facts establishing a prima facie claim for invasion of privacy, it had a compelling interest in abating the spread of Covid-19 that justified any invasion of Ramirez's privacy.

"Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact." (*Hill*, *supra*, Cal.4th at p. 40.) Only if "the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can these issues be adjudicated as a matter of law. (*Ibid.*) We conclude that we cannot resolve these issues at the demurrer stage.

### 4.2.1. Reasonable Expectation of Privacy

"A 'reasonable' expectation of privacy is an objective entitlement founded on broadly based and widely accepted community norms." (*Hill*, *supra*, 7 Cal.4th at p. 37.) A "plaintiff's expectation of privacy in a specific context must be objectively reasonable under the circumstances, especially in light of the competing social interests involved." (*Id.* at pp. 26–27.) "Even when a legally cognizable privacy interest is present, other factors may affect a person's reasonable expectation of privacy. For example, advance notice of an impending action may serve to ' "limit [an] intrusion upon personal dignity and security" ' that would otherwise be regarded as serious. [Citation.] [¶] . . . [¶] In addition, customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable

24

expectations of privacy." (*Id*. at pp. 36–37.) "Finally, the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." (*Id*. at p. 37.)

In *Sheehan v. San Francisco 49ers, Ltd.* (2009) 45 Cal.4th 992, the Supreme Court concluded that the reasonableness of a patdown policy adopted by the San Francisco 49ers, Ltd., which infringed on the plaintiffs' autonomy privacy, could not be decided on a demurrer. The court explained: "The factual record of this case—which consists solely of the complaint—does not establish what the competing social interests are. Presumably, the NFL, and ultimately the 49ers, adopted the policy to enhance spectator safety, but the record does not establish this or explain why the NFL believed the policy was appropriate. As evidenced by the circumstance that the pursuit of safety, like the pursuit of privacy, is a state constitutional right, the competing social interest of enhancing safety is substantial. Those who provide private entertainment venues, including the 49ers at NFL football games, have a substantial interest in protecting the safety of their patrons. But when the security measures substantially threaten a privacy right, courts review the policy for reasonableness under the circumstances. Here, we cannot do so because the record does not establish the circumstances of, or the reasons for, the patdown policy. The 49ers have not yet given any justification for its policy." (*Id*. at p. 1000; see also *id*. at p. 1004 (conc. opn. of Werdegar, J.) ["the 49ers have not negated the existence of a reasonable expectation of privacy in the circumstances, an expectation that is heavily context dependent and can be fairly assessed only after the development of a factual record"].)

25

The Individual Defendants contend that the compelling interest in abating the spread of Covid-19 justified the invasion of Ramirez's privacy. We agree that the Individual Defendants and the City had a compelling interest in providing a safe workplace and protecting the general public from infectious disease. (See *Love*, *supra*, 29 Cal.App.5th at p. 990 [the government has a compelling interest in ensuring the public's health and safety by preventing the spread of contagious diseases]; *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 446 ["employers have a legitimate— indeed compelling—interest in maintaining a safe working environment for their employees"].) However, we do not know why the Individual Defendants felt this interest required them to inform Ramirez's brother of Ramirez's vaccination status and thus cannot conclude that any justification they had for doing so negated Ramirez's reasonable expectation of privacy with respect to his medical information. In the absence of evidence concerning the competing social interests and relevant customs and practices, we cannot hold that the alleged privacy expectation was unreasonable as a matter of law.

### 4.2.2.  Serious Invasion of Privacy

Further, the allegations of the complaint do not establish that the violation of Ramirez's privacy was insubstantial, such that this issue can be adjudicated as a matter of law. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right. Thus, the extent and gravity of the invasion is an indispensable consideration in assessing an alleged invasion of privacy." (*Hill*, *supra*, 7 Cal.4th at p. 37.) "[T]he application of this element in *Hill* demonstrates 'that this element is intended simply to screen

26

out intrusions on privacy that are de minimis or insignificant.' [Citation.]" (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 339.)

In *Strawn v. Morris, Polich & Purdy, LLP* (2019) 30 Cal.App.5th 1087, 1093, the plaintiffs asserted a claim of invasion of privacy against the attorney who represented their home and automobile insurer after the attorney sent their tax returns to the insurer and a forensic accounting firm, even though the plaintiffs had not waived their privilege against disclosure. The court observed that "the seriousness of the privacy invasion worked by disclosure of the tax returns would depend on what information was contained in the returns that was not also contained in the voluntarily disclosed financial documents from which the tax returns were prepared," and thus "the seriousness of the alleged invasion of privacy presented a question of fact that could not be resolved on demurrer." (*Id.* at pp. 1099–1100.) The court further observed that "[w]hether appellants can *prove* an invasion of privacy 'sufficiently serious in . . . nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right' [citation] remains to be seen when the parties' evidence is produced on a motion for summary judgment or at trial." (*Id.* at p. 1100.)

Similarly, it is an unresolved factual question here whether Ramirez's brother was aware of Ramirez's vaccination status prior to receiving notice of Ramirez's termination on the grounds that he failed to comply with the City's vaccine mandate, such that any invasion of Ramirez's privacy in sending the notice to his brother was de minimis. Thus, we conclude that the court erred in sustaining the demurrer to the invasion of privacy cause

of action and that the order of dismissal as to the Individual Defendants must be reversed.

## 5. The court did not err in sustaining the demurrer to the IIED cause of action.

"In order to state a cause of action for intentional infliction of emotional distress a plaintiff must show: (1) outrageous conduct by the defendant; (2) the defendant's intention of causing or reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." (*Trerice v. Blue Cross of California* (1989) 209 Cal.App.3d 878, 883.) Outrageous conduct is conduct which exceeds the bounds of that usually tolerated in civilized society and must be directed at the plaintiff or occur in the plaintiff's presence. (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 903 (*Christensen*).) "Whether conduct is outrageous is usually a question of fact." (*Ragland v. U.S. Bank National Assn.* (2012) 209 Cal.App.4th 182, 204.) For purposes of argument, we will assume that the alleged invasion of Ramirez's privacy was outrageous conduct, and thus consider whether the IIED cause of action is defective on any other ground.

### 5.1. The complaint failed to adequately plead intent to cause severe emotional distress.

The court concluded that the IIED claim with respect to the allegation that the Individual Defendants intentionally mailed the termination notice to Ramirez's brother failed because Ramirez had not adequately alleged intent to cause emotional distress. The complaint alleges that "Razo, Bobadilla, and the City, knowingly and intentionally exposed Ramirez's private

28

medical vaccination status, and the facts regarding Ramirez's termination, by intentionally sending the City's termination letter to Ramirez's brother, *in an envelope addressed to Ramirez's brother*"; "[t]he conduct of the defendants was intentional, extreme, outrageous, and deplorable"; and "the Defendants wanted to humiliate him with the full force of government power." While the complaint alleges that the Individual Defendants acted intentionally and wanted to embarrass Ramirez, it falls short of alleging that they acted "with the intent of causing [Ramirez] extreme emotional distress." (*Trerice v. Blue Cross of California*, *supra*, 209 Cal.App.3d at p. 883.)

On appeal, Ramirez does not contend that he alleged that the Individual Defendants acted with the intent to cause him severe emotional distress. Rather, he argues that "there are allegations of intentional conduct and there is a reasonable inference that in hatching their scheme, both Razo and Bobadilla acted with reckless disregard to the appellant." "It is not enough that the conduct be intentional and outrageous." (*Christensen*, *supra*, 54 Cal.3d at p. 903.) "Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory." (*Id.* at p. 906.) Thus, in the absence of allegations that the defendants' conduct was directed primarily at the plaintiff and was calculated to cause severe emotional distress, a plaintiff must allege that the act was done "with knowledge of [his] presence and of a substantial certainty that [he] would suffer severe emotional injury." (*Ibid.*) Ramirez does

29

not allege that he was present when the Individual Defendants "hatch[ed] their scheme" or mailed the notice to Ramirez's brother. Thus, he has failed to plead the requisite intent or reckless disregard.

### 5.2. The complaint failed to plead that Ramirez suffered severe emotional distress.

Pleading an IIED cause of action further requires that Ramirez plead that the Individual Defendants' conduct actually caused him severe or extreme emotional distress. In *Bogard v. Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 617, a panel of this Division concluded that the mere assertion that the plaintiffs suffered extreme emotional distress was insufficient to satisfy this element. "As explained in the Restatement Second of Torts, section 46, comment j, '[c]omplete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and duration of the distress are factors to be considered in determining its severity.' " (*Ibid.*) Because the plaintiffs "failed to set forth any facts which indicate the nature or extent of any mental suffering incurred as a result of [the defendants'] alleged outrageous conduct," the court concluded that the trial court had not erred in sustaining the demurrer, but that plaintiffs should have been given leave to amend. (*Ibid.*)

Here, the complaint alleges that the Individual Defendants' disclosure of his vaccination status to a third party "caused further harm, embarrassment, anguish, and emotional distress" and "subjected [Ramirez] to further shame and embarrassment." The nature and extent of any embarrassment, anguish, or

emotional distress he suffered are not alleged. (See *Pitman v. City of Oakland* (1988) 197 Cal.App.3d 1037, 1047 ["[t]he allegation that plaintiff suffered shame, humiliation and embarrassment without further factual explanation does not meet the requirement of specificity called for in *Bogard*"].) Thus, Ramirez has also failed to plead that he suffered severe emotional distress with the requisite specificity.

6. **The court correctly concluded that Ramirez failed to plead a cause of action for negligent infliction of emotional distress.**

"Negligent infliction of emotional distress is not an independent tort. . . . [T]he theory on which recovery is sought is negligence[.]" (*Christensen, supra*, 54 Cal.3d at p. 884.) "To succeed in a negligence action, the plaintiff must show that (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the duty, and (3) the breach proximately or legally caused (4) the plaintiff's damages or injuries." (*Thomas v. Stenberg* (2012) 206 Cal.App.4th 654, 662.) "The law in California imposes a duty to avoid causing emotional distress in two general instances. [¶] The first involves 'bystander' situations 'in which a plaintiff seeks to recover damages as a percipient witness to the injury of another.' [Citation.]" (*McMahon v. Craig* (2009) 176 Cal.App.4th 1502, 1509.) "The second source of duty is found where the plaintiff is a 'direct victim,' in that the emotional distress damages result from a duty owed the plaintiff 'that is "assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." ' [Citation.]" (*Id.* at p. 1510.) "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery is available only if the

31

emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985.)

The first of the situations clearly has no application to the circumstances alleged in the complaint, as the court concluded. Further, there are no allegations that the Individual Defendants had a duty to Ramirez imposed by law, assumed by the Individual Defendants, or that existed by virtue of a special relationship between the Individual Defendants and Ramirez. In the absence of any such allegations, Ramirez has failed to plead a cause of action for negligence.

**7.     The court did not abuse its discretion in sustaining the demurrer without leave to amend.**

In his opposition to the demurrer below, Ramirez did not argue that leave to amend should be granted if the complaint failed to plead IIED or NIED causes of action. On appeal, Ramirez fails again to make this argument with respect to the IIED cause of action. He identifies no new facts that could be alleged to establish that the Individual Defendants acted with the requisite intent, nor does he identify facts illustrating the nature and extent of any emotional distress he suffered. Thus, he fails to carry his burden of establishing that the court abused its discretion in denying him leave to amend.

On appeal, Ramirez does argue that he can amend the complaint to allege additional facts supporting the NIED cause of action and argues that the Individual Defendants owe him a duty on several grounds. First, he argues, without citation, that "FEHA and Title VII impose a duty on employers to handle religious exemptions in good faith and on a 'case by case' basis."

32

Contentions not supported by citation to legal authority are forfeited. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) Without knowing what provisions Ramirez refers to, we cannot conclude that "employer" encompasses other employees like the Individual Defendants, or that this duty could be construed to extend to disclosures of medical information. Ramirez also fails to cite any support for his assertion that "any intimate exchange of [religious] ideas and beliefs would by its very nature create a special relationship and duty on behalf of the employer." Finally, Ramirez cites Civil Code section 56.20, subdivision (c), which prohibits employers from disclosing, or knowingly permitting its employees or agents to disclose, medical information about an employee without first obtaining a signed authorization. Ramirez fails to cite authority for the proposition that a statute prohibiting an employer from doing something creates a duty or special relationship between him and other employees. Thus, Ramirez fails to carry his burden of establishing a reasonable possibility that he could amend the complaint to state a negligence cause of action.

## DISPOSITION

The judgment is affirmed in part and reversed in part. In light of the mixed results, the parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

I CONCUR:

EDMON, P. J.

**Egerton, J., Concurring and Dissenting.**

I agree with the majority that the trial court properly sustained the individual defendants' demurrer to Fernando Ramirez's causes of action for intentional and negligent infliction of emotional distress. I respectfully disagree, however, with the majority's conclusion that the court erred in sustaining the individual defendants' demurrer to the fifth cause of action entitled "invasion of privacy."

According to a study in the National Institutes of Health's National Library of Medicine, reported deaths worldwide from COVID-19 in the years 2020 and 2021 alone totaled 5.94 million people. That number may be low: NIH estimates 18.2 million people died worldwide in those two years from COVID-19. (Wang et al., *Estimating Excess Mortality Due to the COVID-19 Pandemic: A Systematic Analysis of COVID-19-Related Mortality, 2020*-21 (April 16, 2022) The Lancet <https://ncbi.nlm.nih.gov/pmc/articles/PMC8912932/> [as of Feb. 1, 2024], archived at <https://perma.cc/S88X-5U6V>.) In the wake of this deadly worldwide pandemic, the City of Montebello adopted a mandatory COVID-19 vaccination requirement for all City employees. The City terminated Ramirez's employment after he apparently refused to comply with this mandate.[1]

_____

[1] Ramirez's complaint never says whether he is or isn't vaccinated. The allegations of his complaint seem to suggest he chose not to be vaccinated. In his first amended complaint, Ramirez alleged the City "fired him for refusing to take the vaccine." The court struck much of the first amended complaint, as it had sustained demurrers to three causes of action in the original complaint without leave to amend.

Ramirez sued the City and two individual City employees. His complaint begins: "Mass hysterias are rarely acknowledged at the time they occur. It is only after a certain amount of time that historians write about how people were overcome by an ideology or moral panic." Ramirez continues: "[T]he government's conduct during Covid-19 [*sic*] was a tragic display of incompetence, hubris, and illegality." Ramirez says, "[T]here is no reason to mandate vaccines in the workplace," adding, "[T]he decision of whether to get vaccinated should be a private affair." Ramirez states, "Montebello's vaccine mandate is unnecessary and cruel, and one day people will look back at public entities like Montebello with horror as they steamrolled individual rights. History will also judge vaccine mandates harshly, and those who collaborated in pushing the hateful division between vaccinated and unvaccinated will not escape that judgment."

Ramirez's complaint alleged five causes of action: "religious discrimination in violation of FEHA"[2] against the City; wrongful termination in violation of a memorandum of understanding between the City and the "Mid-Management Association"; intentional and negligent infliction of emotional distress against the City and the individual defendants; and "invasion of privacy" against the City and the individual defendants. The trial court sustained the City's demurrer to the first cause of action for religious discrimination with leave to amend (noting as pleaded it was not a FEHA claim) and overruled the City's demurrer to the second cause of action

---

[2] The Fair Employment and Housing Act, Gov. Code, § 12940 et seq.

2

for violation of the MOU.  (Ramirez's counsel stated at oral argument that the lawsuit is proceeding against the City.)  The court sustained the demurrer of the City and the individual defendants to the infliction of emotional distress and invasion of privacy causes of action without leave to amend.

In his complaint's general allegations, Ramirez states, "[T]he City intentionally sent his termination notice to his brother, thereby disclosing his vaccination status and health information to a third party, which caused further harm, embarrassment, anguish, and emotional distress."  In his invasion of privacy cause of action, Ramirez further alleges he "enjoyed a legally protected right to maintain the privacy of his medical status as to vaccination, and his employment status."  He states his "vaccination status was unquestionably a private matter and worthy of protection by his employer."  Ramirez alleges the City and the individual defendants "shattered [his] privacy by intentionally mailing [his] vaccination and employment status to his brother, who opened and read the materials that were sent to him."  "As a result," Ramirez says, his "vaccination and employment status were intentionally revealed to a third party."  His "employment status, and his vaccination status," Ramirez continues, "were intensely private matters, and he was subjected to shame and humiliation for being both terminated and unvaccinated."

Ramirez does not say whether he lived with his brother or whether his brother knew or didn't know of his "vaccination status."  Nor does he attach a copy of the notice or the envelope to his complaint.  At oral argument, counsel for the City represented that that was the "address on file with the City" for Ramirez.  When asked by the court if that were true,

3

Ramirez's attorney replied, "I don't have that file or envelope with me but I don't believe that it was."

The majority notes Ramirez has not "identif[ied] any authority supporting a privacy right as to employment status." (Maj. Opn. *ante*, at p. 21.)  I agree.  I therefore address only Ramirez's contention that he "enjoy[s] a legally protected right to maintain the privacy of his medical status as to vaccination."

Unlike the United States Constitution, the California Constitution contains an express right to privacy.  (See Cal. Const., art. I, § 1; *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 (*Hill*).)  To state a claim for violation of the California Constitution's right to privacy, a plaintiff must plead three elements:  "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy."  (*Hill*, at pp. 39–40; *Lewis v. Superior Court* (2017) 3 Cal.5th 561, 571.)  " '[W]hether a legally recognized privacy interest exists is a question of law' " to be decided by the court. (*Garrabrants v. Erhart* (2023) 98 Cal.App.5th 486, 500; *Hill*, at p. 40.)

In sustaining the demurrer to Ramirez's privacy cause of action, the trial court stated, "There is no present California authority for the proposition that there is a medical right to privacy regarding immunization."  The trial court was right. While there are cases concerning vaccinations generally, and vaccinations against COVID-19 in particular, none holds there is, or isn't, a constitutional right of privacy in the fact one is— or isn't—vaccinated.  (See *Brown v. Smith* (2018) 24 Cal.App.5th 1135, 1138–1141, 1144 (*Brown*) [affirming dismissal following order sustaining demurrer without leave to amend to complaint

4

alleging violation of California constitutional rights, including the free exercise of religion, by Senate Bill No. 277, which eliminated the personal beliefs exemption from the requirement that schoolchildren be vaccinated]; *Love v. State Dept. of Education* (2018) 29 Cal.App.5th 980, 984–986, 994 [same; agreeing with *Brown*; in addition, Senate Bill No. 277 did not violate plaintiffs' privacy right; though right to privacy is fundamental, it " ' "is no more sacred than any of the other fundamental rights that have readily given way to a State's interest in protecting the health and safety of its citizens" ' "]; *Burcham v. City of Los Angeles* (2022) 562 F.Supp.3d 694, 699, 702–703, 705–707 (*Burcham*) [applying California law]; *Wolfe v. Logan* (C.D.Cal. Jan. 25, 2023, 2:22-cv-06463) 2023 WL 2239062, at *1, 6 (*Wolfe*) [dismissing privacy claim under California Constitution to vaccination requirement for poll workers in Los Angeles County; citing *Love* as rejecting argument that plaintiff has "privacy interest" in "her private medical information"].)

  *Burcham* is instructive.  There, employees of the Los Angeles Police Department alleged "constitutional and statutory violations based on the City's COVID-19 vaccine mandate for City employees."  (*Burcham*, *supra*, 562 F.Supp.3d at p. 699.)  An ordinance signed by the mayor required City employees "to establish that they [were] fully vaccinated" and to "report their vaccination status" even if granted an exemption. Exempt employees who were required to work in person also were subject to weekly COVID-19 tests.  (*Ibid*.)  The plaintiffs argued the ordinance "violate[d] the California Constitution's right to privacy for two reasons:  (1) it force[d] Plaintiffs to disclose their private medical information; and (2) [it] force[d]

5

them to receive an unwanted medical treatment." (*Id*. at pp. 704–705.)

Citing *Brown* and *Love*, the court held plaintiffs had failed to state a claim for right to privacy violations. The court noted that, when the state " 'asserts important interests in safeguarding health,' the challenged law is reviewed under the 'rational basis standard. In the area of health and health care legislation, there is a presumption both of constitutional validity and that no violation of privacy has occurred.' " (*Burcham*, *supra*, 562 F.Supp.3d at p. 705, quoting *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 712.)

In my view, there's a good reason no published California case (or federal case applying California law) has held there is a right to privacy in the fact of whether one is vaccinated or unvaccinated: A refusal or failure to be vaccinated affects other people. Cancer and diabetes are not contagious. A virus like COVID-19 is. A person who chooses to remain unvaccinated poses a risk to co-workers, others around them, and the public. At oral argument, Ramirez's counsel said twice that his client drove a bus for the City. Bus drivers—obviously—come into daily contact with the public, including seniors and children. Governments have the right—indeed, the responsibility— to protect all of their employees as well as the public. "As many courts have already found, 'requiring state employees to be vaccinated is rationally related to stemming the spread of COVID-19.' " (*Wolfe*, *supra*, 2023 WL 2239062, at *4, quoting *Roman Cath. Diocese of Brooklyn v. Cuomo* (2020) __ U.S. __, 141 S.Ct. 63, 67 [" 'Stemming the spread of COVID-19 is unquestionably a compelling interest.' "].)

Of course, in reviewing a demurrer, we are required to accept the allegations of the complaint as true. The question then is whether those allegations constitute a cognizable cause of action. Taking as true Ramirez's allegation that the individual defendants intentionally disclosed his vaccination status to his brother, that allegation simply does not state a cause of action under existing law. The majority has cited no case recognizing a privacy right under California's Constitution in the fact one is unvaccinated. Nor have I been able to find any case that so holds. In concluding Ramirez *has* stated a cause of action for invasion of privacy, the majority holds—whether explicitly or implicitly—that the fact of a person's "vaccination status" is a protectible privacy interest under California law. That holding represents a significant expansion of tort liability in California.[3]

Finally, the trial court did not abuse its discretion in denying Ramirez leave to amend his invasion of privacy claim. "If the court sustained the demurrer without leave to amend, as here, we must decide whether there is a reasonable possibility

---

[3]     Moreover, apart from the fact that Ramirez has not pleaded the required first element of a privacy claim—a legally protected privacy interest—the facts he alleges do not constitute conduct by the individual defendants "constituting a serious invasion of privacy" in any event. (See *Hill*, *supra*, 7 Cal.4th at pp. 39–40.) Ramirez does not allege the defendants disclosed to his fellow employees that he was unvaccinated, or posted his name on a list somewhere in a public place. His sole allegation is the defendants sent his termination notice—apparently referring to his refusal to be vaccinated (again, Ramirez has omitted to attach this allegedly damning document to his complaint)—to his brother's home. That's it. As a matter of law, that is not a "serious invasion of privacy."

7

the plaintiff could cure the defect with an amendment. . . . If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) The plaintiff has the "burden of proving there is a reasonable possibility of amendment." (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) "The assertion of an abstract right to amend does not satisfy this burden." (*Ibid.*)

Ramirez has not met his burden here. Neither in the trial court, nor here on appeal, has Ramirez explained how he could amend his complaint to cure its defects. (See *Brown, supra*, 24 Cal.App.5th at p. 1148. Cf. *Rakestraw, supra*, 81 Cal.App.4th at p. 44 [plaintiff had not offered "allegations to support the possibility of amendment" or "legal authority showing the viability of new causes of action"].) Indeed, in the first amended complaint Ramirez filed, while he made a number of additions and deletions, the allegations of his invasion of privacy cause of action remain essentially unchanged.[4]

---

[4]    As noted, the court struck the third, fourth, and fifth causes of action of the first amended complaint.

Ramirez renumbered his previous paragraph 19 as paragraph 21: it repeats word for word the allegations of the original complaint that the defendants "intentionally sent his termination notice to his brother, thereby disclosing his vaccination status and health information to a third party, which caused further harm, embarrassment, anguish, and emotional distress."

Ramirez renumbered the paragraphs in his cause of action for invasion of privacy from 50 through 54 to 58 through 62 and added a sentence to former paragraph 50, renumbered 58, stating

I would affirm the trial court's order sustaining the individual defendants' demurrer to the fifth cause of action for invasion of privacy without leave to amend.


EGERTON, J.

---

that his "realleg[ation]" and "incorporat[ion]" "by reference" of his allegations were "done for purposes of appellate review."